Good morning, your honors. My name is John Cloutier. I represent the appellant Sherwin Yellen. Mr. Nandorf, or whatever. Good morning, your honor. I'm John Foran. I represent Nandorf Inc. Each of you have 15 minutes. I would suggest, Mr. Cloutier, you take a few minutes of that time. But we don't look at our watches as long as you keep moving it along. So just make sure you speak into the microphone. And we're ready any time. I can assure you we've read the briefs, so we're familiar with the facts. There's no need to go through the facts. We're ready when you are. Okay. I'd like to reserve five minutes of my time for rebuttal. May it please the court, my name is John Cloutier. I represent the appellant Sherwin Yellen. This is a very simple case that may appear complicated because the trial court chose to mix a negligence case into this condemnation action. But this is a condemnation action which, as stated in Village of Bellwood v. American National Bank and Trust, is a special statutory proceeding. Its procedure is regulated by statute. It is not governed either by, as to pleading or practice by the common law. In the case of Forest Preserve v. Forest Preserve District of DuPage County v. First National Bank of Franklin Park, the Illinois Supreme Court pointed out the longstanding fact that a taking occurs on the date that the government 1. Deposits the amount of compensation that was ascertained and awarded, and 2. Acquires title and the right to possession of the property. Although the Public Building Commission filed this case in February of 2002, the value of the property was not determined until May of 2007, and the PBC did not deposit the award until July 16, 2007. Therefore, the date of possession was not determined until July 16, 2007. Also clearly established in Illinois law is the fact that the government entity does not have to purchase the property even after the value is determined. Until it actually takes the property by paying for it, it is free to abandon the action. The fact that the action can be abandoned until the property is actually paid for was a key factor that the Illinois Supreme Court used in Forest National Bank of Franklin Park in 2011 when it said that the value of the property should be the value of the property when taken. Can I ask you about the lease? Can I ask you about the interpretation of the lease by the trial court? There was no condemnation clause in the lease, correct? Correct. So the court interpreted, I believe it was paragraph 11 or 12, I'm not sure which one it was, relative to what the status of the leaseholder was on the date of the taking, correct? Well, it determined that the lease expired in May. The lease expired by its own terms on May 12, 2007. So what right then did the leaseholder have, what interest or estate in the property did the leaseholder have? At that point, none. They had no estate in the property when it was taken. But didn't the trial court say that there was some interest of the leaseholder at that time? No, what they ruled was that the damaging of the property in January of 2004 deprived the tenant of the bonus value of its lease and it therefore awarded the bonus value from January of 2004, the damaging of the property, until the end of its lease. Okay, but my question is, shouldn't the initial question be what was the interest of the leaseholder at the time of the taking? Right, that should be the initial question and that's where the court messed up because at that point the tenant had no estate in the property and should not have shared in the condemnation award. But the court allowed that leasehold to continue for some reason, I mean, because of the one-year paid rent and something about the damages. I mean, the court allowed that and said that because it viewed the damaging of the property in 2004 as a government taking, which it should not have done, and then it awarded the tenant the value of its below-market lease from January of 2004 until its lease expired in May of 2007. Well, the court affirmably said the taking occurred at the time of the damage. I don't believe it actually said that, but it ruled that because they were deprived of the value of their lease at that point, but for the condemnation action, the property would have been repaired, they would have received a benefit. It was, that's where the court erred because at that point there was no, when the property was actually taken, there was no estate in the property by the tenant. And the tenant, after the property was damaged, correctly filed a negligence claim against the wrecking company that destroyed the property and the PBC and receives a jury award of $1,322,383 for its, which covered its lost profits as if it would have been able to operate its business the entire term of its lease. But you didn't bring that up, or at least your client didn't bring that up, I don't know if you're the trial lawyer, until seven months after the evidence you're hearing. Right, I mean, so rather, I'm sorry, that verdict you just mentioned occurred seven months before the evidence you're hearing. It was never brought up by you at the evidence you're hearing, and it was not brought up by your opponent because it would hurt your opponent's case. And then why isn't that forfeited? The idea of double recovery. I know in your brief you suggest double recovery can be brought up any time. I would beg to differ. Why did you wait? Why did your client wait? Actually, at that point it was another attorney handling the case. But that was, should not have been a factor anyway. The lease had expired. Why don't you answer my question, though, which is, why didn't they bring it up? I believe that it was brought up, and it's actually a different case. It wasn't really to be brought up. The only parties were the states in the property at the time of the taking should have been able to share the time of the report. If it shouldn't have been brought up, why did they put on evidence then? Why? Evidence was put on, right? There was some evidence you're hearing in this case about appraisal value, right, of the lease? Right. Okay. Going back to your argument from a minute ago, it shouldn't have been brought up, yet there was evidence about the value of the lease. How could it not have been brought up, the prior verbiage, at least at that time? At least at that time? Yeah. Well, it was mentioned during the case. The attorney before me, his argument was that the lease expired 60 days after the property was damaged, and that when the building was not repaired by the terms of the lease, if it wasn't repaired, the lease ended. The other side argued that the lease continued until May of 2012 when it expired by its natural term. So during your evidentiary hearing, they argued that, but either way, under the lease was there after May 12th, 2007, and when the property was taken, the only party with an estate in the property was Mr. Yellen. Counsel, following up on Justice's questions, you didn't put on any evidence in the evidentiary hearing, did you? No. The only evidence really presented was the fact that the lease was expired, and if the lease expired, there's no other evidence required because only the parties that have an estate in the property are entitled to receive an award. The only evidence required was the fact that the lease was expired, either in 2004 or May of 2007. Well, Ms. Enright testified, right? Yes. And Yellen testified, right? Mm-hmm. So, I mean... Well, they both testified. The appraiser testified as to the value of the lease from 2004 until it expired in 2007. And in the condemnation context, it doesn't matter. That wasn't part of what was taken from the condemnation action. The taking did not take place under Illinois law until July 16th of 2007, and that is the date that the Court looks at to determine what estates existed in the property. But the valuation is done as of the time of the filing of the condemnation complaint. Actually, the law has since changed. In 2011, the Enforced Preserved District of DuPage County versus First National Bank of Franklin Park, the Illinois Supreme Court overruled the Dunleavy case of 1918 in order to comport with the U.S. Supreme Court's decision to rule that the valuation should be when the property is actually taken. And also, an estate is not evaluated. Even back then, an estate was not valued at the time of the petition was filed. A rate, you looked at the rental value versus the market value of the lease, but a person is only entitled to what is taken from them. So if the lease expires prior to the actual taking, then the party will, the lease gets nothing because nothing is taken from them. In the case of City of Lake Forest versus Lake Forest National Bank, a very similar case to ours, a tenant had a lease to a piece of property. He terminated the lease after the condemnation was filed, but before the award was determined and paid. And the Supreme Court, or the appellate court, followed the Schreber versus Chicago and Evereston Railroad case of 1885, which is showing a longstanding law that if the lease expires either by the actions of the tenant or by the natural term of the lease before the property is actually taken, then the tenant is entitled to nothing because nothing is actually taken from them. I understand. But the date of the expert's date evaluation commenced on, was it 2003? 2004. But that was not a government taking. The damaging of the property by a third party is not a government taking. Nobody argued that it was a government taking. That was a negligence situation. The tenant filed a negligence action and recovered everything it would have made. It recovered for all its lost profits. For the entire term, it was entitled to have the lease. So it was compensated. It received the value of its below market lease. It lost nothing. And the negligence action should not be made part of the condemnation action because they're separate things. And they should never have been mixed in. Would the bonus value be taken as a double recovery, then? Yes. Well, the bonus value, let's say the property was never damaged, the bonus value was a below market lease is realized, the value of that is realized by a tenant in the course of his running the business as lower rent. So each month that he pays lower rent, he receives his bonus value as profits. When the property was damaged in 2004 and they filed suit and received all the lost profits, they received the value of their, the value of their below market rent as lost profits, just as they would have had they been able to operate their business all along. Also, another factor was the, for the year after the damaging of the property, the tenant kept paying rent. And that was another factor that was considered in the negligence suit when they came up with the $1.3 million to compensate them. That was gratuitously paid, so it was voluntary payment. So what was, what do you define as the purpose of the payment of that rent during the period in which the occupant, there could be no occupancy of the building? Well they still maintained a collection box at the property to, which was part of their business, but they also wanted to keep their interest in the property as, I mean in order to collect on the negligence claim or to keep an interest in the property if it was ever repaired, they wanted to keep that going. If they had just closed their business down or moved it, then their damages would have been less, they would have collected less in the negligence action, and nobody knew when the property was going to be taken. So when they made that payment, it was going to be compounded by the application of the bonus payment? Well, they were basically reimbursed because when they sued in negligence, they received all their lost profits, and the rent they paid was a factor in that. If they had paid that $99,000 less in rent, they would have received a judgment of $99,000 less in their award. But another thing with the voluntary payment doctrine is that allows the parties to determine their rights. Mr. Valen received that money. He was entitled to collect his rent while he owned the property anyway, so he also filed a negligence action against the wrecking company and the PBC for his lost rents. Since he had received that $99,000 in rent, he was not able to recover that again from the PBC wrecking company because he had received that. If it had not been paid, he would have been entitled to recover that, too. While if the appellee, Nandorf, had not paid it, they would not have been able to recover it as they did in the underlying suit. But again, these were two different things. The negligence action is separate and distinct from the condemnation action. They have different purposes, and there are different pleading requirements and so forth. Basically, the sole purpose of the condemnation action is to determine the value of a piece of property. And once the value is determined, the public entity has the right to either then buy it at that price or not buy it at that price. It doesn't have to. And if they decide to buy it, then the court then transfers the title and then looks to see who has estates in the property at that point and then distributes the money according to the estates at that time. Counsel, let me ask you, as far as the trial court's determination that there was an estate of some sort in the property by the lessor, what's our standard of review of that ruling by the trial court? Well, I don't believe they ever said there was still an estate in the property. They just looked back and said that if it hadn't been for the condemnation action that Nandorf would have got the benefit of this lease and because the property was under condemnation it was not repaired and therefore felt that they should get something. But in order to apportion some, doesn't there need to be some kind of finding that one has an estate or leasehold? Yes, but there was no finding that there was an estate. The court specifically said that the lease expired in May of 2007. But didn't the court also specifically find a reading, furthermore, there is no dispute Nandorf was paying rent beyond the expiration of the lease on May 12, 2007 and was deprived of his use of the lease premises after that date. Well, that's a, I believe, a miswording by the court because Nandorf paid no rent at all after 2004. But going back to Justice Conner's question, what's our standard of review where the judge is, even if he's completely wrong, what's our standard of review? Well, the standard of review is de novo. Well, out of the actual finding, I'd suggest it's not de novo. I'm not sure, I mean, other places in the ruling, too, he says, you know, there's no doubt that, you know, the lease terminated in the He said it, the sentence before that he said it. That lease is over. Right. And, but Wouldn't the construction of what the lease means be de novo review? Yes, what the lease means would be de novo because it's a matter of law. The fact that the, when the lease Basically, I mean, I view this as everything being a question of law because We've got your argument. You say it several times in your brief. I want you to save a few minutes for reply, and we'll hear from Mr. Foran. Thank you, Mr. Foran. Why don't we start with that? Did your client pay rent after May 7th, May 12th of 2007? He sure did. After 2004, Judge, yes. No, I said 2007. So after May 12th, 2007, the lease on its face expires. Did your client pay rent after that date? He did not, Your Honor. Okay. So I think, Judge, there's some key points that we need to focus in on here, which Your Honor's brought up during Mr. Cloutier's argument. Number one, the lease doesn't go away just because there's a condemnation case. The lease has to be honored because it's in place. It is part and parcel of the bundle of rights that are composed of that property. There's owner's rights, and there's interested parties' rights, such as tenants. That's a statutory provision. What rights did your client have in that property after May 12th of 2007? After the lease on its face expires, what rights did your client have? What estate did he hold? Well, he had a leasehold value. After that date? Actually, Judge, yes. There is an argument to be made that he was a holdover tenant on a month-to-month lease. I think we argue that in the alternative, once the lease expired on that May 12th, 2007 date, he was still a holdover tenant. Holdover tenancies require notice of termination. There was absolutely no testimony that Mr. Yellen, as the landlord, ever provided any notice of termination. That's true, but there's a paragraph 11 that was put into the lease written by Nandorf himself, correct? Correct. And it says, in case the premise shall be rendered untenable by fire, explosion, or other casualty, lessor may, at his option, terminate this lease or repair the premises within 60 days. If lessor does not repair the premises within said time, or the building containing the premises shall have been wholly destroyed, the term hereby created shall cease and determine if premises are being repaired, rent abates for the portion not being used. Now, you say that that is ambiguous, and you wrote it. So what's ambiguous about it? We didn't write it, Judge. That's the landlord's lease. The record, as I understand it, is that it was a paragraph that was submitted by Nandorf. That's not my understanding, Judge. I will check the record. But when this occurred, when the building was damaged by the demolition company, the roof fell in and a side collapsed, correct? Right. And so the building was boarded up then, correct? They were allowed to take out their cash register, but after that they had no occupancy of the building. They were outside it, not inside it. Correct, Your Honor. And so by the terms of this, in reading the language that's here, the lease termination, there was evidently Mr. Yellen talked to some insurance brokers about what it would cost,  there's no way that this building could have been repaired within 60 days, is there? I don't know that, Judge. I'm not a construction person, but I think that's probably fair, because there was certainly some carryover time in consulting with the insurance adjuster, consulting with the construction people. That all came out in sworn testimony at the evidentiary hearing, because we had to interpret this provision. But the 60 days expired, and so the lease expired. I'm talking about prior to the May 12th. And I think that goes to the ambiguity of the lease. Could, in fact, any repair have been done within 60 days? It doesn't explicitly say that. Since it has to happen. And it was happening. That's our point. Our point was that there were discussions going on, there was plans, there was testimony to that effect by our clients, and also by Mr. Yellen. Did he ever brought up an action for specific performance, for example? Well, here's the point, Judge. If my client was involved in prior condemnations where I represented them, they know that the condemning body can walk away at any time. This was a very successful store. They really wanted to open up. There's testimony that Mr. Yellen wanted to fight the condemnation. He wanted to open up. It was a good paying tenant. He testified to that. So at any time, this was not a quick take situation. This case went on for five years in court before there was a jury verdict. After the jury verdict, which was a substantial jury verdict, the city could have decided not to pay it and still could have abandoned. So there was an interest on our part to find out if, in fact, it wasn't a total building that was demolished, about a fourth of the building was affected. So it could have, I don't know if it could have been done in 60 days, but it certainly could have been done within a number of months. If this is to be reviewed by this court de novo, correct? Yes, Your Honor. If I may point out one other thing, Judge, I think it's very, very important on this whole issue of the negligence issue. And this appears in the trial court's decision on page 3. This is the second memorandum decision and order that was issued on August 29, 2011. It's on page 3. And the court refers to the first court order was entered by Judge, this is referring to the negligence action that plaintiff is now trying to conflate with the condemnation action. Judge White stated, the first court order was entered by Judge Thomas Chiola on September 22, 2009 in the negligence case. The defendant, asbestos consulting specialists, request in the negligence was an action for a set-off against Nandorf from any awarding the eminent domain case. Also enclosed in the court order entered by Judge Chiola on November 16, 2009, dismissing the appeal of the negligence action on the motion for defendants. So in the negligence action, this demolition contractor actually requested a set-off against anything that we, Nandorf, would recover in the condemnation case. Judge Chiola denied that request. He denied that set-off. The court has not yet made any decision whether to issue a remand. What effect does that have on the case? Well, if they were to — if you were to allow them, if this were to be remanded and they were allowed to bring in all this testimony regarding the effect of the negligence case on the condemnation case, I mean, essentially, we already have res judicata from the judge that was handling the negligence case that it doesn't apply at all, that there's no tie-in between any negligence claim and the condemnation case. There's no set-off against Nandorf. Anything that Nandorf recovers in the condemnation case can't be set off against any negligence claim. Going back, why can't we — why shouldn't we follow Forest Preserve, DuPage and Shriver, which clearly say that the drop-dead date on leases is when the lease is up, but rather the drop-dead date would be when the taking occurs. The taking occurs when the money is deposited. The money was deposited, in this case, some six weeks or so after the lease expired. How can we write this and not say we disagree with our Supreme Court's case of a year ago that followed law that's been settled for over a century? This is a unique situation, Judge. I hear that every day. I can't tell you how often I hear from lawyers, this is unique. But go ahead. Right. In this situation, we have an appraiser who testified to the valuation of the whole property, including the leasehold value, Ms. Enright. She testified on behalf of Mr. Yellen in the jury trial. I understand that. What's that got to do with my question of how can we write this to say that people who, when the lease expires, can still get money from an allocation made after the taking is done, when the lease has expired before the taking? Right. Because that leasehold value was included, the leasehold value was suspended at that damage date. Okay. My client no longer had any use and enjoyment of that property. Right. And he sued asbestos for it. And he could have sued Mr. Nandorf for it, right? Well, we went, what our leasehold value was still intact, was testified to, was part of the jury verdict. And so that $380,000 that was the leasehold value didn't go away. We actually had the judge determine on our apportionment hearing whether or not that was part of the whole award, and it was. And there's clear testimony from Ms. Enright that she said, the leasehold value is part of the whole value of the property. Are you equating leasehold value with an estate or an interest in the property? Yes. Leasehold value is a term of art that appraisers use, but it pertains to the value that we had in that leasehold. We had a bonus lease. No, I understand, but again, you're equating leasehold value with having an interest or an estate in the property at the time of taking. Yes. Yes. So I understand your problem, Judge, you're saying, you know, the taking. It's been settled for 100 years. No case supports you. Not one. Yeah, that is my problem. And our position is that it's an interpretation of the lease provision, and that because the judge found that there was clearly an intent and action taken by the landlord to repair that, to actually repair all of that. All of that is true. All of that is true, and that the value at the time of the valuation was $380,000 on behalf of your client. He had a value at that time. Why doesn't that value extinguish upon the lease extinguishing? First of all, because there was a jury verdict that included it. And secondly, we never got the use and enjoyment. I have totally agreed, Judge, that if we had been able to remain in that facility and it was repaired, and we were able to open our business and continue to operate, May of 2007, our rights would have been extinguished. We would have had the use and enjoyment. But we never had that use and enjoyment. How is the lack of your use and enjoyment related to the condemnation? In fact, the asbestos people knocking a hole in the wall, right? It's related to that was the outside event that caused it, but it was the lease. The lease is in place. The lease is there in place to cover outside incidents, and that's exactly what happened. Yes, there was this umbrella of a condemnation case, but the lease is in place to deal with outside incidents that occur. And just because there's a condemnation case doesn't mean the lease goes away. But it did go away on May, right? It did. Well, 2007? It did, but the lease provision has to prevail because it was in place. But you say at page 25 of your brief, or in the circumstances under review it is not the expiration of the lease which is controlling. Rather, it is the unexpired term of the lease due to the interruption by the damage event and protracted by Mr. Yellen's conduct, which is controlling. The trial court said Nandorf does not dispute a leasehold, did not exist at the time of actual taking on, and they have the wrong date. It is June. I think it's July of 2007.  gave a trial court a lease of $20,000. When the condemnation award was paid, it admits City Lake Forest District proposition a lease is not, a lease, a lessee, is not entitled to any portion of the condemnation award if the lease is canceled. So in the trial court, it inexplicably ruled in a different fashion. Actually, Judge, I believe, I'll check back, but I believe that the trial court was laying out the landlord's arguments and then laying out our arguments, and there was some overlap, but I don't believe that he was actually stating the position that he was taking. But you do acknowledge this lease expired May 12th of 2007, and therefore, but as to the question of whether there was a leasehold interest as of that date, you do not contest that there was not. If the lease, if there was not a holdover tenancy, which is certainly a possible interpretation. Was that argument in the trial court? And not to cut you off, but the first question I asked you, you said an argument could be made, is that your client is a holdover tenant. Was that argument made? Yes. Judge Alexander White said yes, and I find you're a holdover tenant, or? There was no finding on that, Judge, but he held that there was a tenant. The tenancy did remain intact. But your client requested an extent. There were two option periods that were exercised on the lease that had been included in the original lease.  And that was specifically denied. And therefore, there's nothing that evidences that there was anything that continued this lease in any fashion. There was never, ever a request, Judge, I don't believe that's in the record. The last extension occurred in May of 2002. Remember, the case was filed in February of 2002. So we had our final option could be exercised in May of 2002. That was exercised. But Mr. Bonomo's testimony was that he asked for it. And your expert also, I think, referred to that, that there was a request to extend the lease. There may have been an oral request, Judge. Right. And what's that worth in terms of a promise of offer, acceptance, and consideration? Yeah, there may have been. It was an excellent property. They wanted to continue there. As a matter of fact, they did. Okay, but what's the answer, though? Well, I think the answer is, getting back to Judge Quinn's point, which is that when a real estate appraiser looks at leasehold value, they look at that unexpired term. We had this 40 months left, okay? And because we had this 40 months left and we weren't able to use and enjoy the property, that's how the appraiser looked at that unexpired term had value to it. If they had gone forward and repaired the facility, we would have had the use and enjoyment, and there would have been no claim at the termination. But because the lease should control, because the judge heard all the evidence that it did control, then the tenant, then the appraiser was able to rule that, in fact, there was a leasehold value. But you say again in your brief, in the circumstances under review, it is not the expiration of the lease which is controlling. I don't think it's the only factor that has to be considered, Judge. What would the other be? Paragraph 11? Yes. Okay, but in Paragraph 11 it timed out. 60 days, nothing occurred. And you did nothing? Your client did nothing? No, our client, there's testimony that our client continued to interact. Over a three-year period after the so-called termination period, we took requests from the landlord. We did whatever requests those were. In that context, you left a box, a donation box, next to the property, physically next to the property, which was condemned in two ways. It was condemned for eminent domain later, but it was condemned because it was unsafe to be in and you weren't allowed to be in the building. And you didn't go back in the building until the very end to get out the rest of the stuff, right? Over that period of time, we were hoping that the repair would go forward. But you knew it had to be. The steps that had to be taken under Paragraph 11 weren't taken and the lease expired, correct? Ultimately, the repairs were not made, yes, but there were steps taken. So on this argument, they kept doing business there and they made hundreds of thousands of dollars by having that box there. So when you were referring to before, you were outside, not inside, and the building had been boarded up, correct, to keep people from going in there, right? Correct, yes. Okay, so basically what was happening when you say that, and it's in your briefs, that when you were called by Nandor, when Yellen called Nandor and said, we want you to pick up the things that are on the ground around the box, we also want you to board up the building, that basically was to cure and avoid an attractive nuisance. I think it was a security concern.  But it didn't create a leasehold interest. I think it evidenced, I think Judge Wright ruled, that it evidenced that the landlord relationship was continuing. Counsel, can I ask you about the concept of holdover tenant? What's the length of a lease of a holdover tenant? Can it be month to month or year or what is it? It can be both, Judge. Typically, a holdover tenancy is a year. It could be month to month. But it could be month to month. Right, and that's at the option of the landlord. I think that it's, but there's an obligation if the landlord has to provide notice of termination. Okay, but it is the landlord's option. Right. So you would have us rule that a holdover tenant has an estate or interest in a property on condemnation, on the date of taking, when it's a holdover. That's what you're saying, a holdover tenant would have interest under the condemnation. Yes. Is there a case law for that? Yes, and it's cited in our brief, Judge. Which one? In our only brief. Which case? Is it Boehm? Well, you can think about it while he's reclining. I didn't see it. On page 20 of my brief, Judge, there's the Bransky v. Schmidt motor sales and the Haitley v. Myers case. Both stand for the proposition that a tenant can hand a holdover and have a lease extend, subject to a notice of termination by the landlord. But were those condemnation cases? They were not, Judge. Okay. If I may, and I'm not trying to trick you, is part of your argument, or to get your argument down to the nub, is that in this case, in the condemnation case, the jury decided that the value to Nandorf of the lease was $380,000. And as a result of that, Nandorf is owed that money and not Yellen. Yes. But at the end of the day, since the check wasn't cut or the money wasn't deposited by the Public Works Commission, until shortly after the lease has expired, the argument is shouldn't Nandorf still get that money, as found by the jury, as opposed to Mr. Yellen, who is never, under any theory, entitled to the $380,000. They found that Yellen deserves the $380,000, right? That was money that should have gone to Nandorf. The jury did not specifically make that finding, but the appraiser for Mr. Yellen testified that the value of the whole property included the leasehold value. There was never any bifurcated hearing at the trial about the specific value. That took place subsequently in the apportionment hearing, which it typically does. That's the way it typically is done. And the same appraiser testified, and she bifurcated from her testimony that value of $380,000. So there was not a separate jury finding on that? No. Okay. I'm sorry. I misunderstood. Okay. I apologize. Okay. Thank you. We'll hear again briefly from Mr. Cloutier. Okay. Mr. Foran basically tries to make the argument that after the property was damaged in January of 2004, that they were deprived of the use and enjoyment of the lease. Well, this is not a loss of consortium. This is a business transaction. They received a jury award of $1,322,383 for all of its lost profits, incidental damages, basically everything they would have been able to make on the property if they continued to operate from the date of the damaging for the remainder of their lease. And that's a heck of a lot of use and enjoyment, over $1.3 million. And as I previously said, that included the benefit of any kind of blowback. But again, nobody bothered. Your predecessor never bothered to tell Judge White that. So Judge White is unaware of that until after the fact when counsel to yourself or somebody comes in and says, motion to reconsider. Oh, by the way, this is a double recovery, which we knew about for 15 months, and we're just letting you know now. Right? Well, because in a condemnation action, the issue is when the property is taken, who has estates in the property? And also, under the law, evidence of a double recovery may be introduced at any time, even after the time for appeal has expired. The Supreme Court said in the O'Fallon case. Yeah, we read your brief on that, on double recovery. It can be brought up any time. Do you have anything else in reply to Mr. Fran's argument? Well, I think it is important to point out that there was no specific jury award that the leasehold had a specific value. Right. And again, what's looked at is what estates exist when the property is taken. This isn't they recovered everything from the negligence action, but that's separate anyway. The purpose of the condemnation action is to come up with a value to pay for a property if the government decides to take it. Okay. Thank you very much. Thank you for the briefs. Thank you for the argument. This case will be taken under advisement, and this court will be adjourned.